# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EXXONMOBIL PIPELINE COMPANY**

**v.**

**CHAD V. LANDRY, ET AL.**

**CIVIL ACTION**

**NO. 15-824-JWD-EWD**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 52(a), the Court enters these Findings of Fact and Conclusions of Law relative to Plaintiff ExxonMobil Pipeline Company's ("ExxonMobil") Motion in Support of Preliminary Injunction. (Doc. 16.)  If any finding is in truth a conclusion of law, or if any conclusion stated is in truth a finding of fact, it shall be deemed so.  For the following reasons, the Court grants ExxonMobil's motion.

## FINDINGS OF FACT

1. Defendants Chad V. Landry and Jeanne Burns are the owners of that certain property identified and depicted on Plaintiff's Exhibit 6, titled Subdivision of Tract A-1 for Iberville Real Properties, LLC. ("Property").

2. Defendants, through their predecessors-in-interest, granted a 30 foot wide pipeline servitude or right-of-way ("Servitude") across the Property in favor of ExxonMobil, through its predecessor-in-interest, on April 7, 1943 in a conveyance titled Right of Way Agreement (*see* Plaintiff's Exhibit 8), and subsequently amended the Servitude through an April 23, 1953 Agreement, a July 29, 1966 Agreement, and a March 17, 1981 Amended Right of Way Agreement. (*See* Plaintiff's Exhibits 9-11).  Each document is signed (*see id.*), and Defendants do not dispute that these documents were executed by their predecessors-in-interest.

3.  At all relevant times to these proceedings, ExxonMobil operated 3 pipelines, identified as a 16" EMPCo No. 1 Crude Oil Pipeline, a 16" EMPCo No. 2 Crude Oil Pipeline, and a 8" EMPCo Ethylene Pipeline, within the Servitude as depicted on the survey plat marked as Plaintiff's Exhibit 1 prepared by Ernie Gammon of Hydro Consultants, Inc., whom the Court qualified as an expert in the field of surveying and in the use of aerial photography. No other ExxonMobil pipelines were identified as a result of Hydro Consultants, Inc.'s surveying or otherwise.

4.  Gammon based the surveying on, among other things, survey work done on the property on September 17, 2015; the above right-of-way agreements, including Exhibit A to the March 17, 1981 Amended Right of Way Agreement; aerial photography; and GPS equipment.  Through Gammon, ExxonMobil established the accuracy of the survey plat marked as Plaintiff's Exhibit 1

5.  In 2009, Defendant Chad Landry contacted the Louisiana One Call System prior to constructing the pond on the Property. Mitchell Bryce, an ExxonMobil employee, answered the One Call alert and personally visited the Property and discussed the planned pond with Chad Landry. Bryce instructed Landry to maintain a 10 foot distance between the edge of the proposed pond and the pipeline nearest the proposed pond, the 16" ExxonMobil No. 1 Crude Oil Pipeline, for safety purposes.  Landry agreed to do so. Bryce marked the location of the 10 foot distance on the Property before Landry began excavating the pond. (*See* Plaintiff's Exhibit 1-A). Bryce remained at the Property, observed Landry using an excavator to dig the side of the pond nearest the 16" EMPCo No. 1 Crude Oil Pipeline, and confirmed that the 10 foot zone had been maintained when

Landry completed digging the western bank of the pond, *i.e.*, the bank nearest the 16"

EMPCo No. 1 Crude Oil Pipeline.[1]

6.  As part of ExxonMobil's integrity assessment of the 16" EMPCo No. 1 Crude Oil

Pipeline, ExxonMobil ran a "pig" device to identify any anomalies in the 16" EMPCo

No. 1 Crude Oil Pipeline. Based on data from this operation, ExxonMobil detected an

anomaly identified as a "crack feature" on the 16" EMPCo No. 1 Crude Oil Pipeline

located on the Property.  ExxonMobil was required to repair the anomaly within 180 days

of February 2, 2015. (See Plaintiff's Exhibits 1 and 17).

7.  When ExxonMobil began planning for the work to address the anomaly, ExxonMobil

discovered that the pond had expanded into the buffer zone. A dispute arose between

Defendants and ExxonMobil over the location of the pond and right-of-way and

ExxonMobil retained Hydro Consultants, Inc. to survey the location of the Servitude,

pond and driveway on the Property. Hydro Consultants, Inc. performed the survey and

prepared the plat introduced as Plaintiff Exhibit 1 showing the results of the survey. The

survey establishes that Defendants allowed their pond to expand into the 10 foot safety

zone since its construction in 2009, the pond encroaches on ExxonMobil's Servitude, the

pond partially covers the 16" EMPCo No. 1 Crude Oil Pipeline, and the crack feature is

located beneath the pond. (*See* Plaintiff's Exhibits 1 and 12-14)

8.  ExxonMobil cannot perform the required work on the anomaly due to the fact that the

pond encroaches on the Servitude and the 10 foot safety zone has been eliminated at the

repair area by the expansion of the pond.

---

[1] Landry claims that an employee of a third party contractor did the digging and that he did none.  It is not necessary for the Court to resolve this factual dispute for purposes of this motion.

9.  The expansion of the pond has reduced the depth of cover over the 16" EMPCo No. 1 Crude Oil Pipeline to less than 36 inches and removed lateral support for the 16" EMPCo No. 1 Crude Oil Pipeline, creating a potential environmental hazard to the public and the Defendants. (*See* Plaintiff's Exhibit 1).

10. ExxonMobil has notified the Defendants of the encroachment and requested that the pond be drained or removed to allow the anomaly to be repaired. Defendants have denied these requests.

11. ExxonMobil has also notified Defendants that it will access the repair location by crossing their driveway in the Servitude. Defendants have repeatedly objected to the crossing of the driveway.  (*See* Plaintiff's Exhibit 1). However, Defendants' counsel stipulated at trial that the Defendants now do not object to ExxonMobil using the driveway to access the servitude.

12. ExxonMobil is unable to repair the anomaly because of Defendants' refusal to drain the pond or restore the safety zone, refusal to remove the portion of the pond now located on the Servitude, and refusal to replace lateral support to the pipelines caused by the pond's encroachment. Defendants' actions have caused an unjustified risk to the Defendants and public at large. Defendants' interference with the repair work on the anomaly has caused unreasonable and unjustified delay in the repair of the anomaly in the 16" EMPCo No. 1 Crude Oil Pipeline, and subjected the line to reduced pressure requirements, unjustified environmental risks and a potential shut down.

13. The cost of making the repairs exceeds $100,000.00.

# CONCLUSIONS OF LAW

## A. Jurisdiction

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.  First, the parties are completely

   diverse.  ExxonMobil is domiciled in Delaware and its principal place of business is in

   Texas.  LA. SEC'Y OF STATE, EXXONMOBIL PIPELINE CO., *available at*

   https://coraweb.sos.la.gov/CommercialSearch/CommercialSearchDetails.aspx?CharterID

   =66781_DS93 .[2] Defendants appear domiciled in Louisiana, as they are residing on the

   Property.  Thus, there is complete diversity.  Second, considering the cost of the repair

   and the potential environmental damage, the amount in controversy exceeds the sum of

   $75,000, exclusive of interest and costs.  Accordingly, jurisdiction is proper.

## B. Standard for preliminary injunction

1. As one district court in this circuit has explained:

   > The Fifth Circuit has held that a mandatory injunction is appropriate
   > where the currently existing status quo is causing a party to suffer
   > irreparable injury. *Canal Authority of the State of Florida v. Callaway,*
   > 489 F.2d 567, 576 (5th Cir.1974). Such mandatory preliminary relief,
   > which goes well beyond simply maintaining the status quo pendente lite, is
   > particularly disfavored, and should not be granted unless the facts and law
   > clearly favor the moving party. *Martinez v. Mathews,* 544 F.2d 1233, 1243
   > (5th Cir.1976).
   >
   > . . . The prerequisites for a preliminary injunction are: (1) the substantial
   > likelihood that the moving party will prevail on the merits; (2) a
   > substantial threat that the moving party will suffer irreparable injury if the
   > injunction is not granted; (3) the threatened injury outweighs the
   > threatened harm the injunction may do to the nonmovant; and (4) the
   > granting of the preliminary injunction will not disserve the public interest.
   > *Libertarian Party of Texas v. Fainter,* 741 F.2d 728, 729 (5th Cir.1984);
   > *Canal Authority,* 489 F.2d at 575–77 (applying the factors to a request for
   > a mandatory injunction). Preliminary injunctive relief is not granted unless

---

[2] The Court can take judicial notice of information on official government websites.  *See Planned Parenthood Gulf Coast, Inc. v. Kliebert,* --- F. Supp.3d ----, No. 15-565, 2015 WL 6551836, at *29 at 34 (M.D. La. Oct. 29, 2015) (citing *Denius v. Dunlap,* 330 F.3d 919, 927-27 (7th Cir. 2003)).

the movant clearly carries the onerous burden of persuasion as to all of the elements. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (5th Cir.1983).

*Davis v. Chairman, Texas Bd. of Criminal Justice*, No. 6:10CV646, 2011 WL 831417, at *1-2 (E.D. Tex. Feb. 10, 2011) *report and recommendation adopted sub nom. Davis v. Chairman of the Texas Bd. of Corr.*, No. 6:10CV646, 2011 WL 830668 (E.D. Tex. Mar. 2, 2011)

### C. Substantial likelihood of success on the merits

### 1. Exxon has met its burden

2. The parties are bound by the servitude agreements.  *See Franks Inv. Co. L.L.C. v. Union Pac. R.R. Co.*, 772 F.3d 1037, 1043 (5th Cir. 2014).

3. Defendants are the servient estate holders and ExxonMobil is the dominant estate holder under the servitude agreements providing for the 30 foot wide Servitude.  *Rose v. Tenn. Gas Pipeline Co.*, 508 F.3d 773, 777 (5th Cir. 2007); *see also* La. Civ. Code art. 646 cmt. d ("In the civilian literature, the estate burdened with a predial servitude is designated as 'servient'; the estate in whose favor (or in whose owner's favor) the servitude is established is designated as 'dominant'.").

4. "The owner of the dominant estate has the right to make at his expense all the works that are necessary for the use and preservation of the servitude." La. Civ. Code art. 744.

5. "The owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible." La. Civ. Code art. 745.

6. A dominant estate holder may perform work on the servient estate which is not located within the servitude area when necessary for the use and preservation of the servitude.

*See Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. P'ship,* 2001-2812 (La. App. 1 Cir. 12/30/02), 839 So. 2d 82, 101-02, *writ denied*, 2003-0306 (La. 4/4/03), 840 So. 2d 1219.

7.  If the owner of a servient estate allows conditions to deteriorate to such an extent that the owner of the dominant estate's water line becomes uncovered and later breaks, the owners of the dominant estate have a right to enter the property and make repairs at their expense. *See Comby v. White*, 98-1437 (La. App. 3 Cir. 3/3/99), 737 So.2d 94, 97 (citing La. Civ. Code arts. 744 and 745).

8.  ExxonMobil has established a substantial likelihood of success on the merits.  First, by clearly establishing the location of the anomaly, its significance, the potential for significant environmental damage, and the expiration of federal deadlines to have the anomaly repaired, ExxonMobil has shown that it is necessary for the use and preservation of the pipeline servitude for ExxonMobil to enter Defendants' property and to excavate and repair its 16" EMPCo No. 1 Crude Oil Pipeline by using the Property outside of the Servitude necessary to repair the anomaly and restore lateral support and depth of cover to 36 inches, including draining the pond, restoring the 10 foot buffer zone, and using the Property to the extent necessary to perform the work.  Second, ExxonMobil has established that Defendants have interfered with this ExxonMobil's rights under La. Civ. Code arts. 744 and 745 by refusing to allow ExxonMobil to enter onto the servient estate and make the repairs necessary for the use and preservation of the pipeline servitude.

9.  Accordingly, pursuant to Louisiana Civil Code articles 744 and 745, ExxonMobil is entitled to a preliminary injunction authorizing ExxonMobil to enter Defendants' property (via the driveway, as Defendants stipulated) and to excavate and repair its 16"

EMPCo No. 1 Crude Oil Pipeline by using the Property outside the Servitude as necessary to repair the anomaly and restore lateral support and depth of cover to 36 inches, including draining the pond, restoring the 10 foot buffer zone, and using the Property to the extent necessary to perform the work.

### 2. Scope of the preliminary injunction

10. As stated above, under Civil Code article 745, ExxonMobil is "under the obligation of causing the least possible damage and of removing [the workmen and equipment] as soon as possible."

11. Accordingly, the use of Defendants' land outside the servitude area should be kept to the minimum reasonably necessary to accomplish the work in a safe and efficient manner and with a minimum disturbance to the Defendants' use of his property

12. "If the owner of the dominant estate exceeds or abuses his rights [under La. Civ. Code arts. 744 and 745], he is bound to repair the prejudice sustained by the owner of the servient estate." 4 A. N. Yiannopoulos, *La. Civ. L. Treatise, Predial Servitudes* § 7.4 (4th ed. 2015).

13. "The expense of the constructions and repairs is borne by the owner of the dominant estate, even if they are needed because of an inherent vice of the servient estate or because of a change in the situation of the estates.  When constructions or repairs are needed because of a fault of the owner of the servient estate, the expense is borne by the owner of that estate." 4 A. N. Yiannopoulos, *La. Civ. L. Treatise, Predial Servitudes* § 7.4 (4th ed. 2015).

14. ExxonMobil must make the necessary repairs at its expense at this time.  However, all issues regarding ExxonMobil's and Defendants' right to damages and all other issues

properly raised in the pleadings which are not resolved in this ruling, are reserved to the time of trial.

### D. Other requirements for the injunction

15. Given the treat of environmental damage if the anomaly is not repaired, ExxonMobil has established that a substantial threat that the movant will suffer irreparable injury if the injunction is denied.

16. Given the considerable harm that could result if the injunction is denied, given fact that all issues related to damages have been reserved for the full trial on the merits, and given the scope of the injunction and how narrowly tailored ExxonMobil's rights are herein, the threatened injury outweighs any damage that the injunction might cause the Defendants

17. Finally, the injunction will not disserve the public interest.  Indeed, this preliminary injunction will greatly serve the public interest.  Again, failure to repair the pipeline could cause a spill and thus considerable environmental damages. Further, a shutdown of this strategic pipeline could cause damage to the economy.

(*concluded on next page*)

## CONCLUSION

Accordingly, Plaintiff ExxonMobil Pipeline Company's Motion in Support of Preliminary Injunction is **GRANTED**; and

**A PRELIMINARY INJUNCTION IS HEREBY ENTERED** authorizing ExxonMobil to enter Defendants' property via their driveway and to excavate and repair its 16" EMPCo No. 1 Crude Oil Pipeline by using the Property outside the Servitude as necessary to repair the anomaly and restore lateral support and depth of cover to 36 inches, including draining the pond, restoring the 10 foot buffer zone, and using the Property to the extent necessary to perform the work.

Signed in Baton Rouge, Louisiana, on <u>January 26, 2016</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**